# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:11 cr 13

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) MEMORANDUM AND |
| v. | ) RECOMMENDATION |
| | ) |
| LOHR EBBIE LOVELAND, JR., | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

Pending before the Court are Defendant's Motions to Dismiss [# 12, # 13 & # 22]. Defendant moves to dismiss the Indictment on a number of grounds. On August 2, 2011, the Court held a hearing on Defendant's motions. After consideration of the argument of counsel at the hearing, and after a review of the record and pleadings in this case, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motions.

**I.     Background**

In April 2008, the police responded to a call from Defendant that his wife had fallen from a multi-story deck. Upon arriving at the scene, the police discovered a number of firearms located throughout Defendant's home. Defendant, however, is a convicted felon, having previously been convicted of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).

The Grand Jury then indicted Defendant on May 29, 2008, on a single count of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The case was calendered for trial on the September 8, 2008, trial term. Upon the filing of a consent motion to continue the trial, the Court continued the trial until the November 3, 2008, trial term. (Order, Sept. 8, 2008, 1:08cr54.) Shortly thereafter, the laboratory of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Firearms Technology Branch provided a report to counsel in which it determined that one of the firearms found in Defendant's home was a "machine gun" as that term is defined is 26 U.S.C. § 5845(b). The Government then filed a motion to continue the trial in order to supersede the Indictment, which the Court granted. (Order, Oct. 28, 2008, 1:08cr54.) The trial was continued until the January 5, 2009, trial term. (Id.)

After a teleconference between the Court's assistant, defense counsel, and the Government, the Government moved to dismiss the Indictment without prejudice pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. In its motion, the Government noted the unavailability of the case agent, who would be on maternity leave until late March, that the late discovery regarding the firearms and explosive devices warranted taking a fresh look at the charges in the case, and that Defendant was out on bond. (Gov.'s Mot. Dismiss at 1, 1:08cr54.) The

Government also represented to the Court as follows:

> The undersigned Assistant United States Attorney also underscores a commitment made during the teleconference to defense counsel that if charges are again presented to a Grand Jury, that defense counsel will be notified in advance along with any plea offer that might be proposed.

(Id.) The next day, the Court granted the Motion to Dismiss and dismissed the Indictment without prejudice. (Order, Dec. 31, 2008, 1:08cr54.) Defendant did not move to reconsider this Order or file any objection to the Motion to Dismiss or the Court's Order.

Meanwhile, Assistant United States Attorney Nicks Williams, the prosecutor assigned to the case at the time, unexpectedly died on November 3, 2009. At some point after the death of AUSA Williams, the case was transferred to a new Assistant United States Attorney.

Approximately twenty-five months after the Court granted the Government's Motion to Dismiss, the Grand Jury returned a second Indictment against Defendant charging him with possession of a machine gun that was not registered to him in violation of 18 U.S.C. §922(o)(1) and 26 U.S.C. §§ 5861(d) and 5845, possession of explosives by a convicted felon in violation of 18 U.S.C. § 842(i)(1), and possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). During the period of delay between the Court dismissing the first Indictment

without prejudice and the Grand Jury returning the second Indictment, Defendant's mother Hazel Loveland died. Defendant now moves to dismiss the second Indictment on a number of grounds.

II. **Analysis**

Defendant filed three separate Motions to Dismiss. In his first motion, Defendant contends that the Court must dismiss the second Indictment because the Order dismissing the first Indictment is improper and the Government's dely in re-indicting him has violated his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. In his second motion, Defendant contends that Section 922(g)(1) is unconstitutional under the Second and Fifth Amendments to the United States Constitution. Finally, Defendant contends that Section 922(g) is unconstitutional under the Tenth Amendment to the United States Constitution because it infringes upon the sovereignty of the State of North Carolina.

A. **Neither the Order Dismissing the First Indictment nor the Delay in Re-Indicting Defendant Requires Dismissal of the Second Indictment**

Rule 48(a) of the Federal Rules of Criminal Procedure provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint. The Government may not dismiss the prosecution during trial without

4

the defendant's consent." Fed. R. Civ. P. 48(a). A district court's discretion to deny a motion to dismiss under Rule 48(a) by the Government is limited. United States v. Goodson, 204 F.3d 508, 512 (4th Cir. 2000). "Indeed, the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." Id. As the Fourth Circuit explained in United States v. Smith,

> The disservice to the public interest must be found, if at all, in the motive of the prosecutor. Examples of disservice to the public interest include the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled.

55 F.3d 157, 159 (4th Cir. 1995); see also Rice v. Rivera, 617 F.3d 802, 811-12 (4th Cir. 2010).

Here, Defendant has not demonstrated that the Government's Motion to Dismiss was made by the AUSA in bad faith. The Government filed its motion after a conference with the Court and counsel for Defendant. The motion set forth valid reasons for seeking a dismissal without prejudice of the Indictment - that the case agent was out on maternity leave, the new evidence regarding the machine gun warranted a review of the case, and the possibility of a superceding indictment. Moreover, the motion referenced the conference between the Court and counsel for the Government and Defendant. Defendant does not suggest that

the case agent was not in fact out on maternity leave, the conference with the Court did not in fact take place, or that the AUSA's statement that there was new evidence warranting a new look at the case was false. Again, the question is whether the motion was made in bad faith, not whether the Court could have continued the case instead of dismissing it or whether some other agent could have testified instead of the case agent. See Smith, 55 F.3d at 159. And the record is devoid of any evidence of bad faith on the part of the AUSA in this case.[1] Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 12] as to the issue of the validity of the Order dismissing the original Indictment without prejudice.

Defendant also contends that the delay between the dismissal of the first Indictment and the Grand Jury returning the second Indictment violated his rights under the Due Process Clause of the Fifth Amendment. The Fourth Circuit has

---

[1] In addition, the Court finds that Defendant has waived his right to challenge the original order dismissing the Indictment. At least two other Circuits have held that a defendant waives his or her right to later object to the dismissal without prejudice if he or she fails to do so at the time the Government files the motion to dismiss. See United States v. Palomares, 119 F.3d 556, 559 (7th Cir. 1997); United States v. Welborn, 849 F.2d 980, 985 (5th Cir. 1988). Defendant failed to object to the Government's Motion to Dismiss in the earlier proceedings. Although the Court acknowledges the short time period between the filing of the motion and the Court's Order granting the Motion to Dismiss, Defendant still could have placed an objection in the record if he in fact objected to the dismissal at the time. Defendant could have filed a motion to reconsider, a notice of objection, or taken any number of steps to place an objection on the record. A Defendant may not sit silently by as the Government dismisses a case without prejudice and then wait until the Government re-indicts him to challenge the motives of the prosecutor in dismissing the original indictment. See Welborn, 849 F.2d at 985; Palomares, 119 F.3d at 559.

established a two prong inquiry for determining whether pre-indictment delay violates due process. United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009); United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403 (4th Cir. 1985). First, the Court must determine whether the defendant suffered actual prejudice from the delay. Uribe-Rios, 558 F.3d at 358. The defendant bears the burden of proving actual prejudice. Automated Med. Labs., 770 F.2d at 403. Provided that the defendant can demonstrate actual prejudice, then the Court must consider the Government's reasons for the delay, which it must balance with the prejudice to the defendant. Uribe-Rios, 558 F.3d at 358. "The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" Automated Med. Labs., 770 F.2d at 404 (quoting United States v. Lovasco, 431 U.S. 783, 790, 97 S. Ct. 2044, 2049 (1977)).

The only potential prejudice to Defendant from the pre-indictment delay in this case is the death of his mother, who died during the time period between the Government dismissing the case and the Grand Jury returning the second Indictment. Defendant contends that this "witness would have identified various firearms that were owned by Mr. and Mrs. Loveland. They would have further articulated their reasons for securing them in a gun safe, and the reasons why they

7

had entrusted them to the care of Kathy Loveland." (Def.'s Mot. Dismiss at 16, Jun. 1, 2011.)

As a threshold matter, the loss of this testimony did not prejudice Defendant. Setting aside the credibility of the proffered testimony, the testimony only shows that several of the firearms found in the house of Defendant were owned by his parents. Defendant does not contend that all of the firearms belonged to his parents. Moreover, even assuming that several of the firearms did belong to his parents, the question is whether or not he "possessed" the firearms at issue. 18 U.S.C. 922(g)(1). In fact, the Government need not even show actual possession of the firearm at issue; constructive possession is sufficient for a conviction under Section 922(g). United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992); see also United States v. Ramsey, 56 F. App.'x 140, 141 (4th Cir. 2003) (unpublished) ("Title 18 U.S.C. § 922(g) (2000), criminalizes possession, not ownership, of a firearm . . . .").

Even assuming some slight prejudice to Defendant from the loss of this testimony, there is no violation of due process from the delay in this case. Most of the delay was the result of the sudden death of the prosecutor and the subsequent reassignment of this case to a new AUSA. Although the reassignment could have been done more expeditiously, the delay was not caused "by deliberate or bad faith

acts or omissions on the part of Government employees or prosecutors." Automated Med. Labs., 770 F.2d at 404. Moreover, there is no evidence in the record that the Government intentionally delayed seeking the second Indictment to gain a tactical advantage or that the delay was in "'reckless disregard of circumstances . . . suggesting that the delay would impair the ability to mount an effective defense.'" Id. (quoting, Lovasco, 431 U.S. at 795 n.17, 97 S. Ct. at 2051 n.17.). Accordingly, Defendant has not suffered a violation of his due process rights as the result of the delay in seeking re-indictment. The Court, therefore, **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 12].

### B. Section 922(g) does not Violate the Second Amendment

Defendant contends that Section 922(g)(1) is both unconstitutional on its face and unconstitutional as applied to him. The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In District of Columbia v. Heller, the Supreme Court held that the Second Amendment confers an individual right to keep and bear arms. 554 U.S. 570, 595, 128 S. Ct. 2783 (2008). The Supreme Court, however, noted in Heller that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by

9

felons . . . ." Id. at 626, 128 S. Ct. at 2816. In McDonald v. City of Chicago, __ U.S. __, 130 S. Ct. 3020, 3047 (2010), the Supreme Court reiterate that its decision in Heller did not call into doubt the regulatory prohibitions on possession of a firearm by a felon. The Supreme Court explained that:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S., at ----, 128 S. Ct., at 2816. We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at ---- - ----, 128 S. Ct., at 2816-2817. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

McDonald, __ U.S. __, 130 S. Ct. at 3047. In light of the express statements by the Supreme Court in Heller and McDonald there seems little doubt that Section 922(g)(1)'s prohibition on the possession on firearms by convicted felons is facial constitutional.[2]

In United States v. Chester, 628 F.3d 673 (4th Cir. 2010), however, the Fourth Circuit addressed a constitutional challenge to Section 922(g)(9), which

---

[2] Although, as the Fourth Circuit noted in United States v. Chester, 628 F.3d 673, 679 (4th Cir. 2010), Heller might have left open the possibility that the enumerated lawful regulations could be unconstitutional as applied to a particular defendant.

10

was not included in the Supreme Court's list of presumptively lawful regulatory measures. The Fourth Circuit set forth a two part test for determining whether a regulation violates a defendant's Second Amendment right to bear arms. Id. at 680. First, the Court must determine whether the challenged law or regulation falls within the scope of the Second Amendment's guarantee. Id. "This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification." Id. If the conduct did not fall within the scope of the Second Amendment, then the challenged regulation is lawful. Id. If the challenged regulation does in fact burden conduct that fell within the scope of the Second Amendment when it was ratified by the States, then the Court must apply an appropriate level of means-end scrutiny. Id.

Another district court in this Circuit, however, has recently applied Chester and determined that Section 922(g)(1) is constitutional.[3] In United States v.

---

[3] Again, in light of the statements by the Supreme Court in Heller and McDonald, the Court questions whether the Court even needs to undertake this two pronged analysis as set forth in Chester because unlike Section 922(g)(9), Section 922(g)(1) was one of the specific regulations that the Supreme Court stated was not impacted by its decision in Heller. See United States v. Lunsford, No. 2:10cr182, 2001 WL 145195 (S.D. W. Va. Jan. 18, 2011); United States v. Kanios, No. 1:10cr100, 2011 WL 841080 (N.D. W. Va. Feb. 18, 2011). At most, the Court should consider whether Section 922(g)(1) is unconstitutional as applied to the Defendant. Although the Court, like the Court in Lunsford, is reluctant to read Chester to allow every defendant charged with a violation of Section 922(g)(1) to raise an as applied challenge to a regulation that the Supreme Court has twice stated is not impacted by its decision in Heller, see Lunsford, 2011 WL 145195, at *4-5, the Court acknowledges that in a recent unpublished opinion the Fourth Circuit vacated and remanded a case for the district court to apply the two prong test outlined in Chester in order to determine whether Section 922(g)(1) is constitutional, see United States v. Pruess, 416 F. App'x 274 (4th Cir. 2011) (unpublished). Accordingly, the

Kirkpatrick, No. 3:11cr34, 2011 WL 3204453 (W.D.N.C. Jul. 27, 2011) (Conrad, C.J.), Chief Judge Conrad held that the historical evidence regarding whether convicted felons were prohibited from possessing firearms at the time of ratification was inconclusive and, therefore, applied intermediate scrutiny. The Court found that Section 922(g)(1) survived intermediate scrutiny and was constitutional both facially and as applied. Kirkpatrick, 2011 WL 3204453, at *4.

The Court agrees with the reasoning of the Court in Kirkpatrick. Even assuming that the historical evidence is inconclusive, then Section 922(g)(1) survives intermediate scrutiny.[4] Under intermediate scrutiny, the Government must demonstrate that there is a reasonable fit between Section 922(g)(1) and a substantial government objective. Chester, 628 F.3d at 683.

The Government has satisfied its burden in this case. "It is well-established that protecting the safety and lives of citizens and preventing crime is a substantial government objective." Kirkpatrick, 2011 WL 3204453, at *4 (citing United States v. Salerno, 481 U.S. 739, 750, 754-55 (1987)). The Government has demonstrated that there is a reasonable fit between keeping guns out of the hand of convicted felons and the Government's substantial objective of preventing crime

---

Court will determine the constitutionality of Section 922(g) in accordance with Chester, both on its face and as applied to the Defendant.

[4] The application of strict scrutiny is not appropriate in this case.

12

and protecting the safety and lives of its citizens. In fact, the Supreme Court has noted the serious public safety concern posed by recidivism. See e.g., Samson v. California, 547 U.S. 843, 853-54, 126 S. Ct. 2193, 2200 (2006); Ewing v. California, 538 U.S. 11, 25-26, 123 S. Ct. 1179, 1188 (2003). Accordingly, the Court finds that Section 922(g)(1) survives intermediate scrutiny and is constitutional on its face.

Moreover, the Court finds that Section 922(g)(1) is constitutional as applied to Defendant. Defendant was previously convicted for possession of an unregistered firearm in violation of 18 U.S.C. § 842(i)(1). When he committed this offense, Defendant forfeited his firearms' rights. Defendant was then found with thirty firearms, including a machine gun, thousands of rounds of ammunition, a bullet-proof vest, and trip-wire flares in his home. Applying Section 922(g)(1) to keep firearms out of the hands of an individual who has previously been convicted of a federal firearms related offense goes to the very heart of the Government's substantial objective of preventing crime and protecting the safety and lives of its citizens. The fact that these guns were found in Defendant's home, as opposed to in his car on his person is of no avail. There is little doubt that Section 922(g)(1) is constitutional as applied to Defendant.[5] Accordingly, the Court **RECOMMENDS**

---

[5] Finally, Section 922(g)(1) is not unconstitutionally vague under the Equal Protection Clause. See Kirkpatrick, 2011 WL 3204453, at *5.

that the District Court **DENY** Defendant's Motion to Dismiss [# 13].

### C. The Tenth Amendment does not Require Dismissal of Count Four of the Second Indictment

Count Four of the second Indictment charges Defendant with being a felon in possession in of a firearm in violation of 18 U.S.C. § 922(g). Defendant contends that the Court must dismiss Count Four because Section 922(g) is unconstitutional under the Tenth Amendment because it "impinges upon the public policy of the State of North Carolina." (Def.'s Mot. Dismiss at 6, Jul. 6, 2011.) In short, Defendant contends that Section 922(g) interferes with North Carolina's sovereign authority to determine the rights of its citizens to possess firearms.

The United States Constitution granted Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." U.S. Const. Art. I, § 8. Thus, the Commerce Clause acts as a specific grant of power to Congress to regulate commerce among the States. See generally United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995) (discussing the history of the Commerce Clause). In contrast to the Commerce Clause, the Tenth Amendment provides that "[t]he power not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

To determine whether a congressionally enacted statute violates the Tenth

Amendment, the Court ask two questions.[6] United States v. Bostic, 168 F.3d 718, 723 (4th Cir. 1999); United States v. Johnson, 114 F.3d 476, 480 (4th Cir. 1997). "First, whether the regulation it embodies is within congress' raw power as being within those enumerated in the constitution. Second, whether, even if so, the means of regulation employed yet impermissibly infringe upon state sovereignty." Johnson, 114 F.3d at 480; see also Bostic, 168 F.3d at 723. It is well settled in this Circuit that Congress acted within its authority under the Commerce Clause to enact Section 922(g). See Bostic, 168 F.3d at 724; see also United States v. Gallimore, 247 F.3d 134, 138 (4th Cir. 2001); United States v. Nathan, 202 F.3d 230, 234 (4th Cir. 2000); United States v. Wells, 98 F.3d 808, 811 (4th Cir. 1996). Moreover, the means of regulation imposed by Section 922(g) do not impermissibly infringe on North Carolina's sovereignty. See Bostic, 168 F.3d at 724 (holding that Section 922(g)(8) does not violate the Tenth Amendment); United States v. Williams, 87 F. App'x 908 (4th Cir. 2004) (unpublished) (holding that Bostic foreclosed argument that Section 922(g)(1) violated the Tenth Amendment); United States v. Ayers, 64 F. App'x 400, 400 (4th Cir. 2003) (unpublished); United States v. Pruess, 13 F. App'x 87, 88 (4th Cir. 2001) (unpublished).

---

[6] Again, Defendant has failed to set forth the Fourth Circuit authority in his motion.

Finally, Bond v. United States, 131 S. Ct. 2355 (2011), does not dictate a contrary result. In Bond, the Supreme Court held that an individual has standing to challenge the validity of a federal statute on the grounds that Congress exceeded its authority under the Constitution by enacting the statute. Id. at 2365; see also United States v. Trent, __ F.3d __, 2011 WL 3365199, at *19 n.1 (6th Cir. Aug. 5, 2011). Standing was the only issue before the Court in Bond, and the decision does not impact the numerous decisions of the Fourth Circuit holding that Section 922(g) is a lawful exercise of Congress's authority under the Commerce Clause. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss [# 22].

VI. **Conclusion**

The Court **RECOMMENDS** that the District Court **DENY** Defendant's Motions to Dismiss [# 12, # 13 & # 22].

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation

contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert.</u> <u>denied</u>, 467 U.S. 1208 (1984).

Signed: September 7, 2011

Dennis L. Howell
United States Magistrate Judge