# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:11cr13

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs. )<br>)<br>)<br>LOHR EBBIE LOVELAND, JR. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for New Trial on Basis of Brady Violation [Doc. 78].

## PROCEDURAL HISTORY

On May 29, 2008, the Defendant was charged in United States v. Loveland, Criminal Case No. 1:08cr54, with one count of being a felon in possession of a firearm, a 9 millimeter Glock pistol, in violation of 18 U.S.C. §922(g)(1). [Doc. 12-1]. In September 2008, the Defendant's attorney and the Assistant United States Attorney (AUSA) filed a joint motion to continue the case from the trial calendar. [Doc. 12-2]. In support of that motion, both attorneys advised the Court that items found inside the Defendant's residence were being analyzed for the presence of explosive material and other firearms inside the residence were being analyzed to determine

whether they were fully automatic. [Id.]. Counsel also acknowledged that the results of those analyses would determine whether additional charges would be sought and/or impact the ultimate sentence. [Id.]. The case was continued.

In November 2008, the AUSA moved to continue the case from the November trial calendar based on the Defendant's decision not to enter a plea of guilty to the one count Bill of Indictment. [Doc.12-3]. The AUSA reported that over thirty firearms, hundreds of rounds of ammunition and an explosive device had been found at the Defendant's residence. [Id.]. He also noted that one of those firearms had been examined and determined to be a machine gun. [Id.]. As a result, he sought to supersede the Bill of Indictment in order to add new charges. [Id.]. The motion was granted and the case was continued. [Doc. 12-4].

The defense in the first filed case was that the firearm had been purchased and owned by the Defendant's deceased wife, Kathy Loveland (Kathy). [Doc. 12-5]. The Defendant was arrested when he called emergency responders due to his wife's suicide and the gun at issue was found inside their home.[1] [Doc. 31]. On December 30, 2008, the AUSA

---

[1] The Defendant's wife committed suicide by jumping from the second floor of their home. [Doc. 31].

moved to dismiss the Bill of Indictment without prejudice because the case agent assigned to the case was on maternity leave until March 2009 and because recent discovery concerning the additional firearms and explosives found in the home "warrant[ed] a fresh look at the charges in this case." [Doc. 12-6]. Judge Lacy H. Thornburg, the presiding judge, dismissed the Bill of Indictment without prejudice.[2] [Doc. 12-7].

On February 2, 2011, the Defendant was indicted in this case on the following firearms charges: (1) Count One, possession of a machine gun, a Bushmaster, Model XM15-E2S, .223 caliber, in violation of 18 U.S.C. §922(o)(1); (2) Count Two, possession of the same machine gun which had not been registered, in violation of 26 U.S.C. §§5861(d) & 5845; (3) Count Three, possession of explosives, three M49A1 surface trip flares, by a convicted felon, in violation of 18 U.S.C. §842(i)(1); and (4) Count Four, possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1).[3] [Id.]. The Defendant moved to dismiss this indictment based on the dismissal of United States v. Loveland, Criminal Case No. 1:08cr54, and subsequent pre-indictment delay. [Doc. 12]. This

---

[2]Judge Thornburg has since retired. The current case has been assigned to the undersigned since its inception.

[3]The Defendant's convicted felon status is based on a prior federal conviction; thus, United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), is not implicated. [Doc. 1].

3

Court denied the Defendant's motion on October 13, 2011 and the Defendant's case proceeded to trial on October 31, 2011.

The Defendant testified at his trial that in the early evening of April 11, 2008, his wife Kathy committed suicide by jumping off the second story deck of their home. [Doc. 71 at 118-121]. As a result of his telephone call to 911, police officers arrived on the scene. [Id.]. There was a search of the Defendant's home during which police discovered the firearms which were the subject of the indictment. [Id.]. The Defendant testified that Kathy had always been very interested in firearms and was a good shot. [Id. at 126]. He also testified that the firearms were locked in a gun safe in the study. [Id. at 128]. The Defendant testified that, prior to the trial, he had never seen the Bushmaster rifle, which was the subject of Counts One and Two of the Indictment, which the Government alleged was found in his house. [Id. at 129]. He also testified that there had been at least one occasion when Kathy had purchased a firearm without his knowledge when she bought it as a gift for him. [Id. at 129-130].

Mark Yamber (Yamber), a close family friend who was a pall bearer at Kathy's funeral, testified that the Defendant had tried to sell him an AR-15 rifle. [Doc. 70 at 149-50]. The Defendant testified that his wife had loaned an AR-15 rifle to Yamber and he did not recall offering to sell one.

[Doc. 71 at 131-32]. Yamber testified that for a five year period, he had served on the board of directors for a homeowner's association with the Defendant and that the Defendant had a firearm with him at "the majority" of the board meetings. [Doc. 70 at 149-50]. Yamber testified that the Defendant "usually pulled the weapon out, let people know that it was there." [Id.]. The Defendant carried semi-automatic pistols. [Id.]. Yamber also had visited the Defendant in his home and had seen between two and ten firearms at any given time. [Id. at 150-51]. Yamber had seen an AK-47, an AR-15, a shotgun, pistols and automatic as well as semi-automatic weapons. [Id.].

Despite the Defendant's testimony that all firearms in his home were contained in a gun safe, he acknowledged during his cross-examination that when his home was searched, a revolver was found on a rocking chair and other firearms were found in the entertainment center of his home. [Doc. 71 at 134].

Another witness at trial, Larna Robbins, testified that he had sold a rifle to the Defendant in 2007. [Doc. 70 at 45]. Robbins testified that later in 2007, he sold the Defendant several handguns, sold the Defendant and his wife an AK-47 rifle and later on traded another AK-47 for a .308 M14 rifle. [Id. at 46]. Robbins testified that the Defendant had a gun safe at his

business and that on one occasion, he saw a "survivalist-type" rifle inside the safe. [Id. at 47-48]. Robbins also witnessed the Defendant shooting these guns. [Id.]. Robbins was on occasion inside the Defendant's home where he also saw guns. [Id. at 50-51]. During his testimony, the Defendant testified that any such selling or trading transactions had occurred with his wife, not him. [Doc. 71 at 135-37]. He also testified that all of the firearms in the house were owned by his wife. [Id. at 137].

Officer Jody Price of the Burke County Sheriff's Department testified that after receiving the Defendant's spoken and written consent, he and other officers searched the Defendant's home on the evening of April 11, 2008 and found inside dozens of firearms, including the machinegun which is the subject of this motion. [Doc. 70 at 20–80].

On November 1, 2011, the jury found the Defendant guilty of all four counts of the indictment. [Doc. 54].

## THE ATF REPORT

On April 30, 2012, the Defendant's attorney contacted the AUSA who had prosecuted this case to request unredacted copies of the ATF[4] Trace

---

[4] The acronym "ATF" stands for the Bureau of Alcohol, Tobacco and Firearms.

Reports for the firearms named in the indictment.[5] [Doc. 79 at 2; Doc. 81 at 2]. On that same day, the AUSA requested an explanation of the need for addresses of the original purchasers. [Id.]. Defense counsel did not respond until July 2, 2012 at which time he modified his request to limit it to one firearm, the Bushmaster XM15-E2S rifle. [Id.].

The Bushmaster was the sole subject of Counts One and Two of the Indictment. The evidence was that it was a "machine gun" in the technical sense, since it could discharge more than one bullet with a single pull of the trigger. Whether by design or malfunction this gun would fire two bullets with the single trigger pull and then jam. [Doc. 71 at 183].

The original purchaser of the Bushmaster was Bobby Baker (Baker). [Id.]. The AUSA contacted the investigating agent, ATF Special Agent Jamie Reyes (Reyes), to advise that Baker would likely be contacted by defense counsel. [Id. at 3]. Reyes then advised the AUSA for the first time that she had interviewed Baker on October 28, 2010 at which time she showed Baker a photograph of the Defendant. [Id.]. On July 10, 2012, the AUSA provided the unredacted ATF form to defense counsel. [Id.].

The ATF Trace Form discloses that Baker purchased the firearm at

---

[5] The parties do not dispute that the Defendant had received redacted copies of these forms prior to trial. The Government redacted the addresses but not the names of the original purchasers of the firearms at issue in the indictment.

issue, a Bushmaster rifle, model XM15-E2S, .223 caliber, serial number L097353, on April 12, 1998. [Doc 79-9]. It is undisputed that Baker was the original purchaser although he told Reyes that he could not recall buying the gun. [Id.]. Baker advised that at no point in time when he owned the gun was it fully automatic.[6] [Id.]. Baker did recall selling some firearms in 1999 and 2000 and believed that he sold the firearm at issue at the Hickory Gun Show. [Id.]. Baker did not tell Reyes that he recalled the name of the person to whom he had sold the gun. [Id.]. Reyes showed Baker a photograph of the Defendant and Baker did not recognize the Defendant or know him. [Id.].

## STANDARD OF REVIEW

The Defendant claims that Baker's failure to recognize the Defendant as the purchaser of the firearm at issue was exculpatory evidence withheld by the Government. This, he argues, was a Brady violation which warrants a new trial.[7] In order to obtain a new trial on the basis of a Brady violation, a defendant must (1) identify the existence of evidence favorable to him; (2) show that the Government suppressed that evidence; and (3) show that the

---

[6] There was no evidence that this firearm was ever "fully automatic" in the ordinary sense of the term. It only met the statutory definition of a "machine gun" because it sometimes discharges two bullets with the single pull of the trigger and then jammed. [Doc. 71 at 183].

[7] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

suppression was material.  United States v. King, 628 F.3d 693, 701 (4th Cir. 2011).  The burden of proof rests with the defendant.  Id.  "[A] defendant must specifically prove the materiality of the suppressed evidence, demonstrating a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Id. at 702 (internal quotation and citation omitted).  The Court has considered the entire record of the proceedings herein as well as the ATF report and finds that a hearing on this motion is unnecessary to its resolution.  United States v. Delorme, 481 Fed. App'x. 592, 594 (11th Cir. 2012) (defendant not entitled to hearing on purported Brady violation); United States v. Ferguson, 385 Fed. App'x. 518, 525 (6th Cir.), cert. denied ____ U.S. ____, 131 S.Ct. 3060, 180 L.Ed.2d 887 (2011).

## DISCUSSION

The Government has conceded that the evidence at issue could be seen as exculpatory evidence and acknowledges that it inadvertently failed to disclose it until after the trial and therefore, technically, suppressed it. [Doc. 81 at 2].  The Government disputes, however, that the suppression was material.  It contends that there is no reasonable probability that had the evidence been disclosed prior to trial the outcome thereof would have been different.

Defense counsel was provided the redacted ATF report prior to trial. In that report, it was disclosed that Baker was the original purchaser of the firearm in question although his address was not disclosed. "[I]f defendant's counsel could have discovered the evidence through reasonable diligence," no Brady violation has occurred. United States v. George, 466 Fed. App'x. 304, 307 (4th Cir. 2012) (discussing open file policy and counsel's obligation to review what is provided). No reason has been provided by the Defendant as to why his attorney could not have investigated Baker's whereabouts and interviewed him. Id.

Notwithstanding the fact that defense counsel failed to pursue this evidence before trial, the Court will proceed to consider the materiality of the ATF report in which Baker stated that he did not recognize the Defendant as the individual to whom he sold this firearm. The Defendant was convicted in Count One of possessing a machine gun, the Bushmaster Model XM15-E2S, .223 caliber rifle. An essential element of this offense is that the Defendant possessed a machinegun, not that he owned it. United States v. Nieves-Castano, 480 F.3d 597, 599 (1st Cir. 2007) (ownership of the machinegun is not required for a conviction); United States v. Williams, 364 F.3d 556, 558 (4th Cir.), cert. denied 543 U.S. 910, 125 S.Ct. 229, 160 L.Ed.2d 189 (2004) (noting that under §922(o), possession of merely the

receiver of a machinegun constitutes possession of a machinegun). The Defendant was convicted in Count Two of <u>possessing</u> the Bushmaster Model XM15-E2S, a machinegun which had not been registered to him. <u>United States v. Hamblen</u>, 239 Fed. App'x. 130, 136-37 (6th Cir.), <u>cert. denied</u> 552 U.S. 992, 128 S.Ct. 523, 169 L.Ed.2d 343 (2007) (§5861 is not unconstitutional for criminalizing possession of an unregistered gun which could not be registered because it was illegal pursuant to §922(o); defendant could have complied with both statutes by electing not to possess the gun at issue). In Count Four, the Defendant was found guilty of being a convicted felon in possession of the Bushmaster Model XM15-E2S, .223 caliber rifle, among other firearms and ammunition.

> To show a §922(g)(1) violation, the government must prove three elements: (i) that the defendant was a convicted felon at the time of the offense; (ii) that he voluntarily and intentionally possessed a firearm; and (iii) that the firearm traveled in interstate commerce at some point. §922(g)(1) does not require proof of actual or exclusive possession; constructive or joint possession is sufficient. The Government may prove constructive possession by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item.

<u>United States v. Gallimore</u>, 247 F.3d 134, 136-37 (4th Cir. 2001) (internal citations and quotations omitted). "In a prosecution for possession of a firearm in violation of 18 U.S.C. §922(g), the ownership of the gun is not

dispositive." United States v. Baker, 453 F.3d 419, 422 (7th Cir. 2006). "[T]hat [the Defendant] did not own the gun[ ] does not vitiate his possession of [it] for purposes of section 922(g)[.]" United States v. Hubbard, 61 F.3d 1261, 1272 (7th Cir.), cert. denied 516 U.S. 1175, 116 S.Ct. 1268, 134 L.Ed.2d 216 (1996); United States v. Meade, 110 F.3d 190, 203 n.25 (1st Cir. 1997).

An essential element of each of these counts was the possession of the Bushmaster, not its ownership. Nor does any one of these counts require proof that the possession was sole, actual or exclusive. The Government therefore was not required to prove that the Defendant, as opposed to his wife, owned the Bushmaster. Gallimore, 247 F.3d at 136-37. It could also rely on circumstantial evidence to show that the Bushmaster found in the Defendant's home (whether or not located inside a gun safe) was within the constructive or joint possession of the Defendant. Id. (guns located in safe constructively possessed by defendant); United States v. Ubele, 215 Fed. App'x 971 (11th Cir.), cert. denied 551 U.S. 1108, 127 S.Ct. 2924, 168 L.Ed.2d 252 (2007) (guns located in gun safe possessed). Moreover, a "person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises ...in which it was

concealed." United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999). It is undisputed that the firearm at issue was discovered in the Defendant's home. [Doc. 70 at 22]. The Government therefore was entitled to rely on circumstantial evidence that the Defendant had control over the premises in which the firearm in question was found. Id.; United States v. Ridley, 381 Fed. App'x 247 (4th Cir. 2010) (guns found in trunk of defendant's car constructively possessed because he had control over vehicle); United States v. Pender, 261 Fed. App'x 576 (4th Cir. 2008), cert. denied 553 U.S. 1025, 128 S.Ct. 2098, 170 L.Ed.2d 828 (2008) (circumstantial evidence sufficient); United States v. Cox, 218 Fed. App'x 257 (4th Cir. 2007) (gun found inside bag on defendant's front porch constructively possessed). Regardless of whether the Defendant or his wife owned the machinegun, it was located in the Defendant's home, a place over which he had dominion and control. [Doc. 70 at 22 (no one besides the Defendant and his wife lived in the home); Doc. 70 at 73].

Since the *ownership* of the Bushmaster is not an element of the offenses of which the Defendant has been found guilty, the fact that the original owner of that gun does not recognize the Defendant as the person to whom he *sold* it is not material. United States v. Mejia, 600 F.3d 12, 20 (1st Cir.), cert. denied ____ U.S. ____, 131 S.Ct. 184, 178 L.Ed.2d 110

(2010) (ATF trace report showing the gun, possession of which defendant was convicted, originally purchased by different person and never reported stolen was not exculpatory or material where gun was found in vehicle in which defendant was riding).

> Undisclosed evidence is material when its cumulative effect is such that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.

George, 466 Fed. App'x. at 308-09 (internal quotations and citations omitted).

An ATF report disclosing that Baker did not recognize the Defendant does not undermine confidence in the outcome of the trial because "it is not enough simply to say that favorable evidence was withheld." United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010). Indeed, "[t]he mere possibility that an item of undisclosed information might have helped the defense [does not] establish materiality in the constitutional sense." Kasi v. Angelone, 300 F.3d 487, 504 (4th Cir.), cert. denied 537 U.S. 1025, 123 S.Ct. 551, 154 L.Ed.2d 439 (2002). Witnesses at the trial, including a close family friend, testified that the Defendant possessed many firearms as well

as ammunition inside his home. It is undisputed that the Bushmaster was also found there. United States v. Lane, 267 F.3d 715, 718 (7th Cir. 2001) ("Physical control over a gun is remarkably easy to effect."). Indeed, the evidence was clear that the Defendant routinely bought, sold and traded firearms.

The Defendant argues that since he testified he had never seen the particular gun at issue, Baker's failure to recognize him as its purchaser is material. This evidence, however, cannot negate the fact that this particular gun was found in the Defendant's home. United States v. Wilson, 624 F.3d 640, 661 (4th Cir.), cert. denied ____ U.S. ____, 132 S.Ct. 451, 181 L.Ed.2d 293 (2011) (purportedly suppressed Brady evidence did not contradict other evidence); Mejia, 600 F.3d at 20. Here, "the likelihood that disclosure of the [ATF report] would have resulted in a different outcome is so small that it does not undermine … confidence in the verdict." George, 466 Fed. App'x. at 308-09; United States v. Gillaum, 372 F.3d 848, 858 (7th Cir.), cert. denied 543 U.S. 969, 125 S.Ct. 427, 160 L.Ed.2d 339 (2004) (ATF report which partially corroborated defendant's story that gun found in his apartment belonged to someone else was not material because "the question for the jury was whether Gillaum, a convicted felon, possessed the handgun").

The Court has reviewed the cases cited by the Defendant and finds each inapposite.[8] In Gantt v. Roe, 389 F.3d 908 (9th Cir. 2004), the prosecution's theory of the case was that the accused had taken from the victim a matchbook along with his wallet during a robbery that ultimately ended with the victim's murder. The matchbook was found on the accused at the time of his questioning by authorities and although he claimed that someone else had given it to him, the prosecution's handwriting expert testified that it was "possible" that the victim had written a phone number inside the cover. The prosecution failed to disclose to the accused's attorney the fact that no one from the restaurant bearing the insignia of the matchbook knew or recognized the victim. Likewise, the prosecution did not disclose the fact that the person to whom the phone number belonged did not know or recognize the victim. In Gantt, the accused repeatedly claimed he had gotten the matchbook from someone else but the prosecution's theory of the case was that someone from the restaurant had given the matchbook to the victim. Failing to disclose that no one connected with the restaurant or the phone number contained therein knew

---

[8] United States v. Davenport, 753 F.2d 1460 (9th Cir. 1985), is inapposite because there the Ninth Circuit found that the accused had access to the exculpatory evidence. Likewise, in United States v. Waagner, 104 Fed. App'x. 521 (6th Cir. 2004), there was disclosure, albeit belated, and therefore no Brady violation. United States v. Collazo-Aponte, 216 F.3d 163 (1st Cir. 2000), was vacated and remanded by the Supreme Court. Collazo-Aponte, 216 F.3d 163 (1st Cir.), cert. granted, judgment vacated 532 U.S. 1036, 121 S.Ct. 1996, 149 L.Ed.2d 1000 (2001).

16

the victim was found to be material because it could have significantly undermined the testimony of the handwriting expert. [9] Id. at 915.

Here, Baker's inability to identify the Defendant as the purchaser of the Bushmaster has nothing to do with the crimes of which the Defendant stands convicted. It is undisputed that this gun was found in the Defendant's home. "[T]he history of the gun prior to entering [the Defendant's home] is immaterial." Gillaum, 372 F.3d at 858. The fact that Baker cannot recall to whom he sold the gun years before is simply not relevant and therefore could not have been material. Id.; United States v. Thomas, 321 F.3d 627, 634 (7th Cir. 2003) (government not required to show how the defendant acquired the firearm, just that he possessed it).

The Court has considered the transcripts of the trial in this case as well as the contents of the ATF report. In light of the evidence presented at trial, including the discovery of the firearms in the Defendant's home, and the weight and credibility of that evidence, this Court cannot find that the existence of the ATF report in any manner undermines the verdict rendered. The Defendant received a fair trial, a trial resulting in a jury verdict worthy of confidence. George, 466 Fed. App'x. at 308-09. The

---

[9] Likewise, United States v. Aviles-Colon, 536 F.3d 1 (1st Cir.), cert. denied 555 U.S. 1039, 129 S.Ct. 615, 172 L.Ed.2d 470 (2008), related to evidence showing that the accused belonged to an entirely different conspiracy than the one for which he was on trial.

motion is therefore denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for New Trial on Basis of Brady Violation [Doc. 78] is hereby **DENIED**.

Signed: May 3, 2013

Martin Reidinger
United States District Judge